**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **JASON FOLLOWELL** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 2:24-CV-00055** |
| | § | |
| **CITY OF ARANSAS PASS, et al.** | § | **JURY TRIAL** |

## MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

NOW COME Defendants City of Aransas Pass, Eric Blanchard, Nathan Kelly Gary Edwards, Carie Scruggs, and Ram Gomez ("Defendants" herein), by and through their attorneys McKibben, Martinez, Jarvis, and Wood, LLP, to present this their Motion for Summary Judgment and Motion to Dismiss and present the following facts and arguments:

### A. **INTRODUCTION**

Plaintiff has sued the Defendant City of Aransas Pass, Texas (City herein) for a series of actions which he claims violated his constitutional rights.[1] He has also named a series of the City's officials in the suit, but he names them only in their official capacity.[2] Suits against officials only in their official capacity are truly brought only against the city they represent.[3] As a result, Defendants bring this motion seeking the dismissal of the redundant claims against the officials. The motion also seeks the dismissal of all respondeat superior claims the Plaintiff has attempted to bring as they are contrary to Section 1983.

The City also argues for the dismissal of Plaintiff's only *Monell* claim. Plaintiff fails to state any explicit, implicit, or ratified unconstitutional policy which served as the driving force

---

1 D.E. 4.

2 *Id.*

3 *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985).

behind the allegedly unconstitutional actions taken against him. Additionally, the undisputed facts show that there were no unconstitutional actions taken against the Plaintiff.

Finally, the City is simply immune to the intentional torts of defamation and malicious prosecution.[4] The defamation claim is also precluded by the statute of limitations and the malicious prosecution claim is not properly stated against the City when it is the County which brought charges against the Plaintiff. In either event, these claims must be dismissed as well. This motion seeks to dispense with all of Plaintiff's claims against all defendants for the reasons stated above.

## B. <u>FACTS</u>

Plaintiff claims that his first amendment rights have been impeded on a number of occasions, and Defendants will address them all here. First, Plaintiff alleges that his rights were infringed when he was issued a criminal trespass warning briefly preventing him from entering specific City-owned buildings in September of 2022.[5] The City had reason to believe that Plaintiff posed a threat to City officials and his family arising out of his actions at City council meetings. Prior to the trespass warning being issued, Plaintiff had been attending council meetings and was becoming increasingly aggressive at the meetings.[6] Then he posted on Facebook that he wanted himself and other citizens to bring their guns to the next meeting to enforce their will on City officials through intimidation and force.[7] At the same time, Chief of Police Eric Blanchard received a report from Plaintiff's family that Plaintiff had threatened their lives if they did not

---

4 *Quinn v. Guerrero*, 863 F.3d 353, 361 (5th Cir. 2017).

5 D.E. 4, ¶¶55-65.

6 See Exhibit A, Deposition of Police Chief Blanchard; Exhibit B, Interview with Plaintiff's Sister; Exhibit C, Interview with Plaintiff's Mother.

7 While Plaintiff denies that he made such statements and that he was never provided proof that he made such statements, the undisputed objective evidence shows that he did make these statements and that he was provided the evidence of his own statements before filing this suit. Exhibit D, Compilation of Plaintiff's posts.

support him at council meetings.[8] Specifically, Plaintiff told his mother that if she did not support

him, he would slit her throat and put a bullet in her head before she could bleed out.[9] Both his

mother and sister expressed concerns regarding Plaintiff's mental health, his propensity to commit

acts of violence, and his behavior at council meetings.[10]

In light of these threats, the City issued a trespass warning against Plaintiff to prevent him

from approaching city officials or physically attending city council meetings.[11] The trespass

waring was limited to specific public buildings and would extend for only a three-month period.[12]

While the trespass warning would prevent him from attending council meetings physically, it did

nothing to prevent him from attending virtually or making statements during public comment.

Plaintiff never availed himself of the opportunity to appear virtually.[13]

Next, Plaintiff claims that his rights were infringed when the former City attorney issued a

cease and desist letter to him.[14] The letter informed Plaintiff that he was making false allegations

of nepotism that were defamatory and that he should cease the defamatory speech.[15] Plaintiff was

---

8 Exhibit B and Exhibit C.

9 *Id*.

10 *Id*. Plaintiff will almost certainly deny having made these threats, argue that he did not mean what he said, and/or assert that the recordings constitute hearsay; indeed he has already taken to social media to attempt to discredit his mother and sister in the public eye. However, the statements and recordings are not hearsay because they are not being used for the truth of the matter asserted, and it is not relevant whether or not the Plaintiff actually intended to kill his mother or even whether or not the threat was actually issued. The only relevance is that the City received information indicating that Plaintiff posed a threat to the publics' safety arising out of Plaintiff's actions at public meetings. The City has to take such information seriously regardless of whether or not it later turns out to be true or false. What is material here is that the City received these threats, and that it had every right and duty to act to address the threats; Plaintiff cannot manufacture an issue of fact simply by contesting what he said to his sister or mother because the City has to take such information and threats seriously when they are reported.

11 Exhibit E, Criminal Trespass Warning.

12 *Id*.

13 *Id*.

14 D.E. ¶¶43-52.

15 D.E. ¶43.

alleging that the mayor's brother was hired as a form of illegal nepotism.[16] However, the brother was hired before the mayor was elected.[17] He also alleges his rights were infringed when a city official's private, personal attorney sent him a cease and desist letter.[18]

Third, he alleges his first amendment rights were violated after he was removed from a city council meetings in December of 2023 and January of 2024.[19] In December of 2023 Plaintiff began speaking about his concerns regarding the use of City funds.[20] His statement included yelling and foul language, and he was escorted out after he called a member of the audience[21] "a fucking moron."[22] In January of 2024 he was escorted out after making a similar tirade filled with yelling, swearing, and other aggressive actions such as pounding his fist on the podium.[23] Both incidents were captured on video, and the Court can objectively review Plaintiff's actions.[24] [25]

The City's rules of decorum are standard, and they disallow swearing, disruptive behavior, fighting words, and purely personal attacks.[26] Plaintiff's behavior in both meetings constituted fighting words and violated these rules. Plaintiff alleges that his removal from these meetings violated his first amendment right despite his actions which precipitated his removal.

---

16 D.E. ¶43

17 Exhibit F, Cease and Desist Letter.

18 D.E. ¶47.

19 D.E. 4, ¶¶ 66-72, and 73-89.

20 While Plaintiff alleged that funds were being misappropriated, the City recently received a report and opinion from an independent law firm which found that there was no misappropriation and that the use of funds was legal and with the City's proper policies.

21 Upon information and belief, the individual was the fire chief who was present as a member of the public to observe the meeting.

22 D.E. 4, ¶68.

23 D.E. 4, ¶75 and 82.

24 December 4, 2023 meeting: https://www.youtube.com/live/8i7Q5trpr1c?si=Su7aQ4jgQY8Y53nC&t=3567 (The relevant portion begins at 59:27 and proceeds to 1:03:00).

25 January 16, 2024 meeting: https://www.youtube.com/live/X2Boli8kKaA?si=JQxSwyIRCGXv0CgL&t=2473 (The relevant portion begins at 41:13 and proceeds to 44:00). Plaintiff's attorney gives a statement immediately following Plaintiff's removal that is not relevant to this case.

26 Exhibit G, Rules of Decorum.

Plaintiff alleges that the County attorney brought charges against him as a result of his actions at the January meeting.[27] Neither the County nor the County attorney is included as a defendant in this suit.

Plaintiff also alleges a violation of his Fifth Amendment right against warrantless searches and seizures. However, the search that he alleges was "warrantless" was actually conducted pursuant to a warrant which was provided to him when the inspection took place.[28] The "search" in question was actually a fire inspection to look for code violations which do not hold any potential penalty of incarceration. It was an administrative search conducted under an administrative search warrant. [29] Plaintiff was shown this warrant when the search was conducted and he fought to quash it to fight his fire code citations; Plaintiff has known of the existence and content of this warrant for some time.[30]

The law in Texas allows for a code enforcement officer to identify code violations outside and around a building and for those violations to justify the issuance of a search warrant to enter the premise to search for other violations.[31] Texas law even allows a magistrate to consider the "general conditions" of the premises to justify a warrant to enter and search the premises for fire code violations.[32] The warrant affidavit in this case identified multiple code violations outside the building and a neutral magistrate signed the search warrant to conduct a fire code inspection inside

---

[27] D.E. 4, ¶93.

[28] D.E. 4, ¶29; Exhibit H, Administrative Search Warrant.

[29] *Id*.

[30] Exhibit I, Body Camera Footage of Fire Inspection. Plaintiff is handed the administrative warrant at 1:50.

[31] Tex. Code Crim. Proc. Art. 18.05(c).

[32] *Id*.

the premise.[33] It is the fire inspection conducted under this signed administrative search warrant

which Plaintiff now complains of as "warrantless."[34]

## C.  EXHIBITS IN SUPPORT OF DEFENDANTS' MOTION

| Exhibit Letter | Description |
|---|---|
| A | Excerpts of Chief Blanchard's deposition establishing the City's knowledge of the threat Plaintiff posed to officials and the public. |
| B | Recording of an interview between Chief Blanchard and Plaintiff's sister wherein she details the threats Plaintiff has made against his family in relation to his fight against the City and his deteriorating mental health. |
| C | Recording of an interview between Chief Blanchard and Plaintiff's mother detailing the threats he has made against her for failing to support him in his crusade against the City at council meetings. |
| D | Compilation of Plaintiff's posts which preceded the criminal trespass warning being issued against him wherein he threatens to use weapons to enforce his will on the City officials. |
| E | The Criminal Trespass warning issued to prevent Plaintiff entering specific public buildings. |
| F | Cease and desist letter regarding objectively false and defamatory statements against the City. |
| G | The City's Rules of Decorum. |
| H | Administrative search warrant allowing for a fire inspection of Plaintiff's business. |
| I | Body camera footage showing the inspection. Plaintiff is handed the warrant at 1:50 and he requests to fight the police chief at 19:11. |
| J | Plaintiff's deposition excerpts. |
| K | Affidavit of Chief Blanchard authenticating exhibits. |
| Meeting Video Link | December 4, 2023 meeting video. The relevant portion showing Plaintiff's disruption occurs from 59:27-1:03:00. |
| Meeting Video Link | January 16, 2024 meeting video. The relevant portion showing Plaintiff's disruption occurs from 41:13-44:00. |

## D.  ARGUMENT AND LAW

### I.    The "Official Capacity" Defendants must be dismissed as the actions against them are truly against the City of Aransas Pass

---

[33] Exhibit H.

[34] D.E. 4, ¶ 29.

Plaintiff has not sued the human defendants in their individual capacities, but instead has sued them in their official capacities only.[35] All of the human defendants are or were officials within the City, and Plaintiff has admitted on multiple occasions that they are only being sued in their official capacities.[36] A suit against a defendant only in their official capacity is not truly a suit against that person, but a suit against the entity for which they were acting an agent.[37] Because the City is a listed defendant in this suit already, and each claim against an official capacity defendant is really a suit against that same city, to avoid redundant claims the proper action is to dismiss the official capacity defendants.

"As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity."[38] When the governmental entity is already included in the suit, any claim against persons acting in their official capacity for that same governmental entity is duplicative and should be dismissed.[39] A court in the Texas Southern District recently held that the rule requiring the dismissal of claims against official capacity defendants when the governmental entity is also sued as "well established."[40] As a result, Defendants Blanchard, Kelly, Scruggs, Edwards, and Gomez should all be dismissed as the claims against them are truly claims against the City and duplicative of the

---

[35] D.E. 4.

[36] *See* D.E. 1, D.E. 4. Plaintiff also admitted on the record that the suit was brought against them in their official capacity, which is why qualified immunity is not an issue in this case. *See* Docket Text entered 6/13/2024, Dig. # 1:30 – 1:42.

[37] *Quinn*, 863 F.3d at 361.

[38] *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985); *McCarthy v. Hawkins*, 381 F.3d 407, 414 (5th Cir. 2004).

[39] *See Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020); *Tristan v. Socorro Indep. Sch. Dist.*, 902 F. Supp. 2d 870, 876 (W.D. Tex. 2012); *McCarthy*, 381 F.3d at 414; *Ky. v. Graham*, 473 U.S. at 165.

[40] *Campos v. City of Port Lavaca*, No. 6:20-CV-00055, 2021 U.S. Dist. LEXIS 234777, at *8 (S.D. Tex. Dec. 8, 2021). This unpublished opinion is attached herein as Exhibit I.

claim against the City which is already in this case. These duplicative claims against the human defendants should be dismissed at this time.

### I.    All but Plaintiff's "Municipal Liability" claim sound in respondeat superior liability for which Section 1983 imposes no liability on the Defendant City

Section 1983 does not provide for a respondeat superior cause of action against cities wherein they could be held liable for the actions of their employees as an ordinary employer might.[41] Instead, a municipality can only be held liable for any unconstitutional policies that it enforces that constitute the driving force behind a violation of a plaintiff's constitutional rights.[42] Only Plaintiff's seventh claim for relief, titled "municipal liability" alleges any enforcement of a nebulous and unspecified unconstitutional policy.[43] Claims 1-4 and 6 all assert respondeat superior liability against the City, which is simply not a basis for relief under Section 1983.[44] Because Claims 1-4 and 6 state respondeat superior claims against the City for which relief cannot be granted under Section 1983, those claims should be dismissed.[45]

It is well established that Section 1983 does not impose respondeat superior liability on municipalities, but only gives rise to claims which allege that the municipality implemented and enforced unconstitutional policies.[46] Respondeat superior claims, wherein a plaintiff attempts to hold a municipality liable for allegedly unconstitutional actions taken by its employees or officials

---

41 *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978); *St. Maron Props., L.L.C. v. City of Hous.*, 78 F.4th 754, 759 (5th Cir. 2023).

42 *Id*.

43 D.E. 4, ¶¶ 128-33.

44 D.E. 4, ¶¶ 95-115 and 122-27; *St. Maron Props.,*78 F.4th at 759.

45 *Id*.

46 *Monell*, 436 U.S. at 691; *Gonzales v. Nueces Cty.*, 227 F. Supp. 3d 698, 702 (S.D. Tex. 2017).

have long been held to be impermissible under Section 1983.[47] Only a *Monell* claim alleging an unconstitutional policy can be asserted against a municipality using Section 1983.[48]

Plaintiff's claims 1-4 and 6 all assert a respondeat superior claim against the City. Those claims all allege that various city officials acted against Plaintiff's constitutional rights and that the City should be held liable as a result.[49] While Plaintiff does attempt to allege that the officials are also liable, those officials are sued only in their official capacities, which is a suit against the City.[50] As a result, Plaintiff has alleged only that the City should be held liable for the alleged actions of city employees and officials.[51] Plaintiff himself seemingly admits that these claims do not assert a claim against a municipality because claim number seven is expressly labeled as Plaintiff's "municipal liability" claim.[52] Claims 1-4 and 6 claims clearly sound in respondeat superior liability and they do not properly state a *Monell* claim against the City. As a result, Claims 1-4 and 6 should be dismissed for failing to state a proper claim upon which relief can be granted.

## II.    The City is entitled to summary judgment on Plaintiff's *Monell* claim

### a.    Plaintiff has not alleged the existence of an explicit policy which violates his constitutional rights

The first type of *Monell* claim that can be asserted against a municipality is one that alleges the existence of an express unconstitutional policy.[53] Here the Plaintiff does not attempt to allege the existence of any explicit policy, statement, ordinance, regulation or decision that was officially

---

47 *Id*.
48 *Id*.
49 D.E. 4, ¶¶ 95-115 and 122-27.
50 *Id*.
51 *Id*.
52 *See Id*.
53 *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

adopted or promulgated.[54] As a result, the Plaintiff has failed to allege the existence of an explicit policy that could give rise to a *Monell* claim and must instead have alleged the existence of an implied policy.

### b. **Plaintiff has not properly alleged the existence of an implicit unconstitutional policy through any pattern, policy, or custom**

Because Plaintiff has not alleged the existence of an explicit policy, he is left with the task of alleging the existence of an implied unconstitutional policy. To do so, Plaintiff must have alleged that the officials' actions were so often repeated, widespread, or common that they constitute a settled custom that fairly represents an official municipal policy.[55] While Plaintiff concludes that the City has an unwritten and unspecified "policy, practice, or custom to retaliate against Plaintiffs[56] for engaging in their protected First Amendment activity," he fails to allege that any single other person within the City has ever been subject to the same "retaliation" that he complains of.[57]

To establish an implicit policy a plaintiff must allege that the same allegedly unconstitutional actions that were taken against them were also taken against others in the past in a "persistent and widespread practice."[58] It is not enough for a Plaintiff to allege multiple unconstitutional policies enforced only against them, and multiple policies which resulted in a constitutional violation "must be disaggregated" even when addressed in a single suit.[59] This is

---

54 D.E. 4, ¶¶ 128-33.

55 *Pineda.*, 291 F.3d 325, 328 (5th Cir. 2002).

56 As further discussed below, it is not sufficient for Plaintiff to allege unconstitutional actions against himself. He must show that the same actions have been taken against others.

57 D.E. 4, ¶128.

58 *Pineda.*, 291 F.3d at 328; *Piotrowski v. City of Hous.*, 237 F.3d 567, 580-81 (5th Cir. 2001).

59 *Id.*

because even "taken together, they express no single municipal policy but only a series of adversarial conclusions by (the plaintiff).[60] As a result, a plaintiff must be able to point to other individuals who have suffered the same treatment to present an implied policy *Monell* claim. The Plaintiff here does not attempt to allege that any other individual was ever subjected to the same treatment he alleges in this suit, and, as a result, his *Monell* claim must be dismissed for failing to state a claim.

Even if Plaintiff somehow argues that he has alleged other incidents which might show a widespread practice, those other incidents must be sufficiently similar to the ones described here to qualify as popper evidence supporting his *Monell* claim. To properly allege the existence of such a pattern "requires similarity and specificity."[61] The current plaintiff must be able to describe past incidents that happened to others with specificity, and the past incidents must be sufficiently similar to the unconstitutional conduct complained of by the current plaintiff.[62] Additionally, the sufficiently similar and specific past incidents ""must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees."[63] If the Plaintiff is unable to identify any other person who has suffered the same allegedly unconstitutional conduct, or if the past incidents are not sufficiently similar to the instant incident, or if there are not a sufficient number of sufficiently similar past incidents, then the Plaintiff is unable to properly

---

60 *Id*.

61 *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009).

62 *Id*.

63 *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).

allege an implied policy through a widespread practice and pattern of conduct. Plaintiff here has not alleged the existence of even a single past incident.

Plaintiff identifies no other person who has allegedly suffered from retaliation for exercising their free speech. Without even alleging a single past incident that is similar to the ones he complains of here, the Plaintiff cannot properly state a *Monell* claim based on a common or widespread practice.

### c. Plaintiff's *Monell* claim is not properly brought under a ratification theory

The final way to allege the existence of a policy is to allege that even though there is no evidence of a pattern or custom to show the existence of an implied policy, that the current constitutional violation is so heinous and blatant that the lack of punishment by policymakers shows that they ratified the constitutional violation. However, not every constitutional violation can give rise to a *Monell* claim based on a ratification theory; only those violations which involve some "extreme factual situations" which are "manifestly indefensible" will give rise to such claims.[64] The constitutional violations here do not rise to the extreme level that might justify a ratification claim, as Plaintiff's claims are based on the execution of an administrative warrant that was signed by a judge to conduct a fire code inspection, his physical trespass from city council meetings following a threat to government officials[65], and his brief removal from a city council meeting after he became disruptive.

---

64 *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985); *Coon v. Ledbetter*, 780 F.2d 1158, 1162 (5th Cir. 1986); *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017); *Taylor v. Hartley*, 488 F.Supp.3d 517, 536-37 (S.D. Tex. 2020); *Estevis v. City of Laredo*, No. 5:22-CV-22, 2024 U.S. Dist. LEXIS 54701, at *50 (S.D. Tex. Mar. 27, 2024). Exhibit I.

65 Plaintiff was still permitted to attend meeting virtually, although it appears that he elected not to do so.

To assert a ratification claim, the Plaintiff must allege that the facts of the incident which he complains about are sufficiently heinous that they are "manifestly indefensible."[66] Ratification is only available as a theory upon which a *Monell* claim can be made in those select few extreme circumstances, and the Court may assess whether such extreme circumstances are alleged as a matter of law when considering a motion to dismiss.

While what constitutes sufficiently extreme circumstances is precisely defined, an examination of when it has and has not been applied makes it clear that this claim is not one which justifies the use of the ratification theory.[67] For example, courts have justified the use of the theory when officers "poured" gunfire into a truck, killing an innocent occupant.[68] However, they have also found that shooting a fleeing suspect in the back did not constitute such extreme circumstances as to justify the use of the ratification theory.[69] Even a finding that a fatal shooting was unconstitutional will not compel a finding that the actions were sufficiently manifestly indefensible.[70] In another case, the Court of Appeals held that the facts were not extreme enough to warrant the use of ratification when that plaintiff alleged an unlawful use of force which caused a rupture of his femoral artery, requiring two surgeries to repair.[71] Even these cases involving serious and often fatal uses of force against a plaintiff were not extreme enough to justify the use of the ratification doctrine to state a *Monell* claim.

---

66 *Peterson*, 588 F.3d at 850-51.

67 *See Taylor*, 488 F.Supp.3d at 536-37.

68 *Grandstaff*, 767 F.2d at 166, 168, 170-72.

69 *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998).

70 See *Davidson*, 848 F.3d at 395-96 ("Here, the underlying conduct by [the officers], while unconstitutional, was not sufficiently extreme to qualify for a finding of ratification."); *Estevis*, 2024 U.S. Dist. LEXIS 54701, at *50 (holding that multiple officers' fatal shooting of a suspect constituted an unconstitutional use of force that was not sufficiently "manifestly indefensible" as to subject the city to liability.).

71 *Peterson*, 588 F.3d at 850-51.

The case here involves no use of force, or even an arrest. The search of Plaintiff's business was not even a criminal search, but the execution of a signed administrative warrant to conduct a fire inspection.[72] He was issued a trespass warning notifying him that he was able to enter specific public buildings for a limited period of time following a threat to government officials and other citizens related to his behavior at council meetings.[73] He was also asked to leave two council meetings after he became disruptive and aggressive, but he was never even arrested. Unlike the plaintiffs in *Peterson, Estevis*, or *Snyder*, Mr. Followell was never shot or physically harmed in any way. If the facts in *Peterson*, *Estevis*, or *Snyder* were not extreme enough to warrant the use of the ratification theory, then the facts presented in this case certainly do not.

### d.   There is no evidence that any constitutional violation ever took place

The final element of any *Monell* claim is that a constitutional violation must have taken place. The facts of this case, even when examined in the light most favorable to the Plaintiff, show that no constitutional violations took place. Each of Plaintiff's alleged constitutional violations must be examined individually, and the evidence produced in this case definitively shows that no constitutional violations occurred as a matter of law.

### i.   The "warrantless search" performed pursuant to an administrative warrant did not give rise to a compensable constitutional violation

Even giving Plaintiff the benefit of the doubt, it is indisputable that the search he alleges was "warrantless" was in fact performed pursuant to a signed administrative warrant.[74] That signed administrative warrant is attached herein, Plaintiff was handed the document during the search,

---

72 *See* Exhibit H.

73 Exhibit E.

74 Exhibit H.

and he fought to quash it to fight the civil citations that resulted from the code inspection; he has known the search was conducted pursuant to this warrant for some time now despite his pleadings to the contrary.

The probable cause needed to obtain an administrative warrant to conduct a code inspection is different from that which is required to conduct a normal criminal inspection.[75] While the burden is still labeled probable cause, it is not the same probable cause that is required to obtain a criminal warrant; this is because an administrative warrant is based in enforcing public safety regulations and violations of the fire code do not give rise to incarceration penalties.[76] On its face, the administrative warrant does state probable cause to perform a fire inspection of the inside of the Plaintiff's business.[77]

Texas law explicitly allows for a code officer to identify fire code violations outside of a building and for those external violations to serve as a basis to enter the building to search for other infractions.[78] The Texas legislature has the right and ability to set forth these standards for obtaining the warrant to protect the public, Plaintiff's customers, from potential hazards which result from non-compliance with the fire code.[79] This is exactly what happened in this case, and the warrant expressly lays out the external violations and concludes that an internal inspection is

---

75 Tex. Code Crim. Proc. Art. 18.05; *Trinity Marine Prods. v. Chao*, 512 F.3d 198, 203 (5th Cir. 2007).

76 *Id*. (holding that "administrative warrants are distinguishable from traditional criminal warrants in a number of ways. They have, for instance, a different – linguistically idiosyncratic – 'probable' cause standard: Probable cause may be based either on specific evidence of an existing violation, as in the traditional criminal context, or on a lesser showing that 'reasonable legislative or administrative standards for conducting an inspection are satisfied.'")(citing *Marshall v. Barlow's, Inc*., 436 U.S. 307, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978)).

77 While the Plaintiff quashed the administrative warrant in fighting the fines he incurred as a result of the code violations identified in this search, that does not mean that the search was warrantless as Plaintiff alleges.

78 Tex. Code Crim. Proc. Art. 18.05; *Camara v. Mun. Court of S.F.*, 387 U.S. 523, 536-38, 87 S. Ct. 1727, 1735-36 (1967).

79 *See Trinity Marine Prods.*, 512 F.3d at 203; *Barlow's*, 436 U.S. at 312.

permitted.[80] The warrant was facially valid and the officers executing it had no reason to believe that the warrant was invalid.

When a search is conducted pursuant to a facially valid warrant, there is no liability for a warrantless search even if the warrant is later quashed during a criminal proceeding.[81] That is precisely what happened in this case, and the fact that a facially valid administrative warrant was later quashed will not result in a compensable constitutional violation which could give rise to a *Monell* claim.

### ii. Defendant did not violate Plaintiff's rights when it physically restricted his access to city council meetings after receiving a threat

Plaintiff also claims his rights were violated when he was issued a trespass warning from city council meetings after he issued threats on Facebook to city officials and made threats to his family members arising out of his behavior at public meetings.[82] While he omits the threats he made from his pleadings, it is indisputable that they were made and seen by city officials, which prompted the trespass warning to be issued to him.[83] The City does not commit a constitutional violation when it prevents someone from physically attending council meetings after they have issued threats against City officials and other members of the public related to those meetings.[84] A municipality, similar to any other landowner, is permitted to control who can physically access

---

80 Exhibit H.

81 *See United States v. Gibbs*, 421 F.3d 352, 358 (5th Cir. 2005)(finding no fourth amendment violation occurred when an arrest was made pursuant to a facially valid warrant).

82 D.E. 4, ¶¶ 55-65 and 95-115.

83 See Exhibits B, C, and D.

84 *Clifton v. City of Denton*, No. 4:06cv472, 2007 U.S. Dist. LEXIS 103424, at *14-15 (E.D. Tex. Aug. 15, 2007)(finding no constitutional violation occurred after a plaintiff was issued a trespass warning "out of concern for the safety of City employees and to maintain peace and order on its premises.");

its property.[85] The government has a significant interest in both the safety of the public and of its officials, and can restrict access to otherwise public spaces to ensure these interests are served; especially when alternative forms of communication are left available.[86]

In this case, the City was made aware of threats that the Plaintiff posted online, advocating the use of firearms and physical force to enforce his will and political ideology at the City's council meetings.[87] Plaintiff had a history of threatening violence against City officials, as he had already threatened to fight the police chief in relation to his dispute regarding the fire inspections of his building.[88] The City was also aware of threats the Plaintiff had made to family members wherein Plaintiff threatened to kill them if they did not support him at council meetings, telling his mother that he would slit her throat and put a bullet in her head before she could bleed out if she did not support him in his crusade against the City.[89] Due to these escalating threats, Plaintiff was issued a trespass warning from specified buildings for a limited period of three months.[90]  Additionally, the City did not deprive the Plaintiff of his opportunity to speak at council meetings or conduct business with the City.[91] He was told that he could make statements at meetings virtually and he could conduct any business he had with the City either online or over the phone.[92]

---

85 *Wilson v. State*, 504 S.W.3d 337, 346 (Tex. App. 2016)("Under the Constitution, governmental entities have the same rights as private property owners to control their properties, so long as the entity's policies are not employed as a subterfuge for illegal discrimination.").

86 *Clifton*, 2007 U.S. Dist. LEXIS 103424, at *14-15; *Burson v. Freeman*, 504 U.S. 191, 197, 112 S. Ct. 1846, 1850, 119 L. Ed.2d 5 (1992); *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 2753-54, 105 L. Ed.2d 661 (1989).

87 Exhibit D.

88 *See* Exhibit I.

89 Exhibit B and C.

90 Exhibit H.

91 *Id*.

92 *Id*. Plaintiff never did virtually attend any meetings virtually.

The City has a right to control their property and issue trespass warnings that it deems necessary to ensure that its business may be conducted smoothly and without threats of violence.[93] The City here was aware of threats Plaintiff had made against his family to ensure their support of him at city council meetings. Additionally, the City here received threats of violence from Plaintiff against city officials. As a result of these threats, the City issued a criminal trespass warning to Plaintiff in a very limited way so as to allow him to still participate in public comment and receive city services without allowing him access to specific buildings wherein the council meetings took place and city officials worked. The City was well within their rights to take this action to protect citizens and officials, and it did not constitute a violation of Plaintiff's constitutional rights. Because the trespass was not a constitutional violation, it cannot give rise to a *Monell* claim.

### iii.  <u>Plaintiff's brief removal from a council meeting after causing a disruption was not a constitutional violation</u>

Finally, Plaintiff claims that his brief removal from a council meeting constituted a violation of his freedom of speech. However, the brief removal occurred only after Plaintiff violated the meetings rules of decorum and the laws of the State of Texas, and the brief removal did not violate any of his constitutional rights.[94]

Plaintiff was briefly removed from two council meetings after giving highly charged and aggressive statements during public comment wherein he leveled personal attacks against city officials and audience members, screaming and swearing that they were "pieces of shit." During both tirades, he was warned several times to not swear, to follow the meetings rules of decorum,

---

93 *Clifton*, 2007 U.S. Dist. LEXIS 103424, at *14-15.

94 December 4, 2023 meeting: https://www.youtube.com/live/8i7Q5trpr1c?si=Su7aQ4jgQY8Y53nC&t=3567 (The relevant portion begins at 59:27 and proceeds to 1:03:00). January 16, 2024 meeting: https://www.youtube.com/live/X2Boli8kKaA?si=JQxSwyIRCGXv0CgL&t=2473 (The relevant portion begins at 41:13 and proceeds to 44:00).

and to cease personal attacks.[95] When Plaintiff continued his disruptive behaviors, he was briefly removed from the meetings. Plaintiff was never arrested and was allowed back into the meeting after a brief period of time. The County, not the City, later brought charges against the Plaintiff in relation to his disruption of the second meeting.

The City is permitted to institute rules of decorum limiting disruptive behavior and speech during city council meetings, which are considered only a limited public forum.[96] While Plaintiff may have a right to address the city council, "that right is subject to the City's interest in conducting orderly meetings via its rules of procedure and decorum."[97] There is no constitutional violation for suppressing free speech when a citizen is removed from a public meeting after engaging in "badgering, constant interruptions, and [a] disregard for the rules of decorum."[98] "A city council may … impose reasonable restrictions to preserve 'the civility and decorum' necessary to further the purpose of the meeting."[99] The *Kindt* Court even noted that a municipality should be afforded a "great deal of discretion" to set their own rules governing decorum at their public meetings.[100] The City has an interest in conducting a civil, peaceful meeting that is open to all members of the public, and aggressive profanity laden speech such as that which Plaintiff exhibited serves only to

---

[95] The rules allow for disparaging public comment against City officials, but they do not permit personal attacks. Arguing that officials are not doing a good job is absolutely permitted. Calling them a "piece of shit" is a purely personal attack with no public value.

[96] *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 270-71 (9th Cir. 1995);

[97] *Gjemre v. Leffingwell*, No. A-13-CA-729-SS, 2015 U.S. Dist. LEXIS 11557, at *16 (W.D. Tex. Jan. 30, 2015).

[98] *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 281-82 (3d Cir. 2004).

[99] *Ream v. Garrett*, No. 3:14-CV-4338-B, 2015 U.S. Dist. LEXIS 174842, at *4-5 (N.D. Tex. Dec. 7, 2015); *See also Wenthold v. City of Farmers Branch*, No. 3:11-CV-0748-B, 2012 U.S. Dist. LEXIS 18452, 2012 WL 467325, at *7 (N.D. Tex. Feb. 14, 2012) (Boyle, J.), aff'd, 532 F. App'x 474 (5th Cir. 2013) (internal citations omitted).

[100] *Kindt*, 67 F.3d at 271-72.

disrupt the meeting, infringe on other's rights to speak, and impedes the peaceful progress of a city council meeting.[101]

Additionally, aggressive speech which would constitute fighting words is not protected speech at all. The speech here is analogous to that seen in *Estes v. State*, although the speech seen in this case is far more extreme and aggressive.[102] In that case, a student put the middle finger in the face of his principle during a formal graduation ceremony; he was later charged with violating Tex. Penal Code § 42.01 which criminalized the use of fighting words. The Supreme Court has long held that fighting words, those which would ordinarily incite a breach of the peace, are not protected speech.[103] The Court in *Estes* found that the silent use of the middle finger constituted fighting words, and that if used outside the formal setting of a graduation ceremony and against an average, reasonable person[104], not a principle trained to compose themselves around students, would likely cause a breach of the peace.[105] The speech that Plaintiff exhibited here went far beyond that of a middle finger; if he had behaved and said as he did at the meeting in an informal setting it certainly would have resulted in a breach of the peace.

---

101 *See Finger v. Garza*, No. SA-02-CA-0956-RF, 2003 U.S. Dist. LEXIS 21045, 2003 WL 22768236, at *2 (W.D. Tex. Oct. 7,2003), aff'd, 98 F. App'x 326 (5th Cir. 2004) (unpublished); *See also* December 4, 2023 meeting: https://www.youtube.com/live/8i7Q5trpr1c?si=Su7aQ4jgQY8Y53nC&t=3567 (The relevant portion begins at 59:27 and proceeds to 1:03:00). January 16, 2024 meeting: https://www.youtube.com/live/X2Boli8kKaA?si=JQxSwyIRCGXv0CgL&t=2473 (The relevant portion begins at 41:13 and proceeds to 44:00). Plaintiff's behavior can only be described as disruptive.

102 *See Estes v. State*, 660 S.W.2d 873 (Tex. App.—Fort Worth 1983, pet. ref'd).

103 *Id*.; *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S. Ct. 766, 769 (1942).

104 It does not matter if *Plaintiff* believes his actions and words were violent or constituted fighting words. *Estes*, 660 S.W.2d at 875. Plaintiff had made clear that he has no qualms about engaging in physical altercations and does not believe that "shooting up" someone's vehicle is even an act of violence. Exhibit I. Instead, the Court must look to what a reasonable person might consider to be fighting words likely to cause a breach of the peace. *Estes*, 660 S.W.2d at 875. In *Estes*, the court found that reasonable people would consider the use of the middle finger to someone's face to be speech that would be likely to cause a breach of the peace outside of the confines of a formal ceremony. *Id*.

105 Id.

Because Plaintiff failed to comply with the constitutional rules of decorum and because his speech at the meetings constituted unprotected fighting words, there was no constitutional violation when he was briefly removed from two council meetings.

### III.    Defendant City is immune to any defamation claim

Plaintiff asserts a state law claim of defamation against the City of Aransas Pass.[106] A municipality is only subject to liability for state law claims if the Texas state legislature has expressly and explicitly waived its immunity.[107] While the Texas Tort Claims Act has given a limited waiver of immunity for very specific types of claims, there is no waiver of immunity for intentional torts.[108] Defamation is an intentional tort, and the City retains its immunity against such a claim.[109] The City's immunity deprives this Court of jurisdiction over Plaintiff's defamation claim, and it must be dismissed at this time.

### IV.    The statute of limitations precludes Plaintiff from bringing a defamation claim

The Plaintiff's claim against the City for defamation is not only baseless due to the City's immunity to the claim, but also because the statute of limitations precludes Plaintiff from bringing the claim more than one year after the claim accrued.[110] According to Plaintiff's own complaint, the alleged defamation occurred on September 19, 2022, November 8, 2022, and February 6, 2023.[111] Plaintiff has not identified any other specific statements as being defamatory in his complaint, which was originally filed on March 1, 2024.[112] None of the defamatory statements

---

106 D.E. 4, ¶¶116-121.

107 *Meroney v. City of Colleyville*, 200 S.W.3d 707, 710 (Tex. App. 2006).

108 *Id.*

109 *Id.*

110 *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 741 (5th Cir. 2019).

111 D.E. 4, ¶¶ 48, 58, and 60-61.

112 D.E. 4.

were made within a year of the filing of this lawsuit, and thus all are precluded by Texas' statute of limitations pertaining to defamation claims. As a result, the claims should be dismissed.

### V.    Defendant City is immune to any malicious prosecution claim

Plaintiff has claimed that the City wrongfully brought a criminal charge against him which arose out of his disruption of the council meeting referenced in his Complaint.[113] Plaintiff makes clear that it is the County attorney, and not an individual employed or controlled by the City, who brought the charges against him.[114] Additionally, malicious prosecution is an intentional tort, which the City retains immunity against.[115] In either event, the malicious prosecution claim is baseless and must be dismissed at this time.

### E.  CONCLUSION

Plaintiff's claims in this case are truly only against a single defendant, Defendant City of Aransas Pass, because all claims against the named persons were brought against them only in their official capacity. As a result, all officials should be dismissed so that the true party, which is already named in the suit, can proceed.

Next, because the City is the only true defendant in this case, only Plaintiff's seventh claim for "municipal liability" should proceed to a *Monell* analysis. Claims one through four and six state a respondeat superior theory of liability against the city, which is not tenable under Section 1983.

Plaintiff's *Monell* claim fails in this case for a number of reasons. First, Plaintiff is unable to establish or allege the existence of any policy which was the driving force behind a constitutional

---

113 D.E. 4, ¶¶ 90-94 and 122-27.

114 D.E. 4, ¶93.

115 *Davis v. San Antonio*, 739 S.W.2d 394, 396 (Tex. App. 1987).

violation. He does not allege the existence of any explicit policy and he cites to no other individual who has been subject to the same allegedly unconstitutional actions to establish an implied policy. He cannot avail himself of any theory of ratification because the case does not involve any allegedly unconstitutional actions which arise to sufficiently extreme, glaringly shocking circumstances which are necessary to apply the theory. Additionally, there was simply no unconstitutional actions taken against him. As a result, his seventh claim must be dismissed.

Plaintiff's only remaining claim, his fifth, must be dismissed as well. First, the City is immune to Plaintiff's defamation claim. Second, the statute of limitations ran on this claim before suit was filed. As a result, the Plaintiff's fifth claim must also be dismissed.

WHEREFORE PREMISES CONSIDERED, all Defendants, City of Aransas Pass, Eric Blanchard in his official capacity, Ram Gomez in his official capacity, Carie Scruggs in her official capacity, Nathan Kelly in his official capacity, and Gary Edwards in his official capacity, request that the Court GRANT this Motion and dismiss the Plaintiff's suit against them pursuant to all of the arguments set forth above. They also request any and all relief that this Court deems just.

Respectfully submitted

By: */s/ James McKibben*
    James McKibben
    *Attorney-in-Charge*
    State Bar No. 13713000
    Federal ID No. 914
    jmckibben@mcv-law.com
    Marshall Gardner
    Of Counsel
    State Bar No. 24123828
    Federal I.D. No. 3755601
    mgardner@mmjw-law.com
    McKIBBEN, MARTINEZ, JARVIS &
    WOOD, L.L.P.
    555 N. Carancahua, Ste. 1100

Corpus Christi, Texas 78401-0841
Telephone: 361.882.6611
Facsimile: 361.883.8353

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that in accordance with the Federal Rules of Civil Procedure a true and correct copy of the foregoing was forwarded in the manner indicated below to Plaintiff's counsel on January 14, 2025.

CJ Grisham
3800 S. General Bruce Dr.
Suite 103-101
Temple, Texas 76504
Email: cj@cjgrisham.com

*/s/ James McKibben*
James McKibben