Case 2:24-cv-00055   Document 45   Filed on 07/07/25 in TXSD   Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
July 07, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JASON FOLLOWELL, § | |
| § | |
| Plaintiff, § | |
| V. § | CIVIL ACTION NO. 2:24-CV-00055 |
| § | |
| CITY OF ARANSAS PASS, *et al.*, § | |
| § | |
| Defendants. § | |

## ORDER

*[W]e consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.*[1]

### I. Background

Plaintiff Jason Followell was a citizen of Aransas Pass, Texas, with a "substantial interest in the public meetings held by City Council." (D.E. 4, p. 3). This lawsuit arises out of his desire to express his substantial interest and the following events.

In 2022, Plaintiff was issued three cease-and-desist letters. (D.E. 35-2, p. 3–4; D.E. 27-6). He alleges the letters resulted from his protected speech at City Council meetings and were designed to threaten him into silence. (D.E. 4, p. 12–13, 15). All three letters instructed Plaintiff to cease defaming City Council members and included threats of legal action if Plaintiff were to continue. (D.E. 35-2, p. 3–4; D.E. 27-6).

Notwithstanding the cease-and-desist letters, Plaintiff continued to attend additional City Council meetings throughout the year. (D.E. 4, p. 8; D.E. 27, p. 2). Plaintiff alleges he sought to speak about "the continual abuse of power by Defendants[.]" (D.E. 4, p. 8). But, in early September

---

[1] *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (citations omitted).

2022, the City issued him a criminal trespass warning which barred him from entering numerous City properties until further notice. (D.E. 27-5). The document stated that the City had "reliable and credible information that [Plaintiff] pose[d] a significant public safety threat, including physical violence, to elected city officials, city employees, and the general public inside city facilities." *Id.* (alterations in original). It also informed Plaintiff that the City would ensure reasonable means for him to conduct any official essential business despite his exclusion from certain City properties. *Id.* And, it stated that Plaintiff remained free to participate in City Council meetings via YouTube or "other prior arranged participation such as video conferencing, teleconferencing, live social media, or written communication." *Id.*

After the trespass warning had expired, Plaintiff attended at least two more City Council Meetings. (D.E. 4, p. 9–11; D.E. 27, p. 4). At the December 2023 City Council meeting, Plaintiff took the podium to "discuss several issues of public concern" regarding alleged "unlawful expenditures." (D.E. 4, p. 9; D.E. 27, p. 4). While at the podium, Plaintiff began raising his voice and using profanity. (D.E. 27, p. 4) (citing video of incident). After he called a member of the audience "a fucking moron," he was escorted out of the meeting. *Id.* Apparently undeterred by his removal, Plaintiff came to another meeting in January 2024. (D.E. 27, p. 4; D.E. 4, p. 10). Again, he was escorted out of the meeting. *Id.* In both instances, the City asserts that Plaintiff was ejected from the meetings because he had violated its Rules of Decorum. (D.E. 27, p. 4).

Finally, while the above unfolded, the Aransas Pass Fire Department conducted several inspections at Plaintiff's business between March and June 2022. (D.E. 4, p. 4–5; D.E. 27, p. 5). One such inspection in June 2022 involved Defendants Blanchard (Aransas Pass Police Chief) and Kelley (Aransas Pass Fire Chief and Police Officer) entering Plaintiff's business. *Id.*

On the basis of the above events, Plaintiff sued various Defendants and alleged numerous constitutional and state-law violations. As it stands, Plaintiff's suit has crystallized into four claims: (1) a Fourth Amendment claim; (2) a First Amendment claim as to the cease-and-desist letters; (3) a First Amendment claim as to the criminal trespass warning issued to Plaintiff; and (4) a First Amendment challenge to the City's Rules of Decorum. (D.E. 35-1, p. 4–14).[2] Defendants have moved for dismissal and summary judgment on all of Plaintiff's claims. (D.E. 27).

## II. Law and Analysis

### A. General Legal Principles

*i. Motion to Dismiss*

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). While a sufficient complaint does not require detailed factual allegations, the facts pled must raise the plaintiff's "right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). A court must draw all reasonable inferences in favor of the plaintiff. *Allen v. Vertafore, Inc.*, 28 F.4th 613, 617 (5th Cir. 2022). However, a plaintiff must provide "more

---

[2] Plaintiff withdrew his defamation claims during the March 20, 2025 hearing, and voluntarily abandoned his malicious prosecution claim. *See* March 20, 2025, Minute Entry; (D.E. 35, p. 16–17). Despite stating in conclusory fashion that he has "successfully overcome *Monell* liability" as to his Equal Protection and retaliation claims, Plaintiff substantively fails to respond to Defendants' arguments for their dismissal. *See generally* (D.E. 35, p. 4–14). Accordingly, the Court **DISMISSES** those claims. *See McClelland v. Katy Independent School Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023) (collecting cases) ("This circuit's well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings.").

than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

### ii. Summary Judgment

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1017–18 (5th Cir. 2021) (quoting FED. R. CIV. P. 56(a)). The moving party bears the initial burden of identifying the portions of the record it believes show the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## B. Claims against Defendants in their official capacities

The law treats official-capacity suits as suits against the governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Accordingly, "more is required" than in an individual capacity claim. *Id.* at 166. A plaintiff must show that the governmental entity's policy or custom played a part in the violation of federal law. *Id.* (citations omitted). "There is no vicarious municipal liability under § 1983; rather, plaintiffs must prove that action pursuant to official municipal policy caused their injury." *Three Legged Monkey, L.P. v. City of El Paso Texas*, 652 F. App'x 236, 239 (5th Cir. 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)) (citation modified).

Plaintiff directs his Fourth Amendment claim, and First Amendment claims regarding the cease-and-desist letters and criminal trespass warning, towards City officials in their official capacities. (D.E. 4, p. 12–15). However, Plaintiff fails to allege any municipal policy or custom that was the moving force behind the allegedly unconstitutional actions taken by the named

officials. *See id.* This dooms his claims.[3] *See Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (holding plaintiff must establish an official policy or custom that was the moving force behind a constitutional violation). The Court **GRANTS** Defendants' motion to dismiss Plaintiff's Fourth Amendment claim, and his First Amendment claims relating to the cease-and-desist letters and the criminal trespass warning.

### C. Rules of Decorum

At hearing and in their briefings, the parties agree that Plaintiff has challenged the City's Rules of Decorum as violating the First Amendment.[4] *See* (D.E. 36, p. 6–9; D.E. 35-1, p. 10–14). Defendants[5] have moved for summary judgment on this claim, arguing that the Rules of Decorum comport with the requirements of the First Amendment. (D.E. 27, p. 18–20; D.E. 36, p. 6–9).

At its City Council meetings, Aransas Pass has adopted and implemented a policy known as the "Rules of Decorum." (D.E. 27, p. 18–19). The Rules provide for two periods of public comment: (1) "citizens comment period"[6] and (2) "public hearings on an agenda item." (D.E. 27-7, p. 1). The Rules specify that members of the public may not shout or engage in unruly behavior,

---

[3] Plaintiff's allegations of any particular Defendant's deliberate indifference collapse in the absence of a clear policy or custom. *See Brown v. United States Postal Inspection Serv.*, 206 F. Supp. 3d 1234, 1247 (S.D. Tex. 2016) (quoting *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)) ("The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.")

[4] It remains unclear whether Plaintiff brings a facial or as-applied challenge to the Rules of Decorum. Each category implicates a distinct analytical framework. *People for Ethical Treatment of Animals v. Hinckley*, 526 F. Supp. 3d 218, 226 (S.D. Tex. March 16, 2021) (Miller, J.).

[5] Because Plaintiff names only official-capacity Defendants, the claim is properly directed at the City only. *See Garza v. Escobar*, 972 F.3d 721, 734 (5th Cir. 2020) (dismissing duplicative claim). The Court **DISMISSES** any claim relating to enforcement of the rules of decorum against any official-capacity Defendants as duplicative of the claim against the City.

[6] Although this might suggest a limitation to a certain class of speakers, the preceding sentence of the Rules states that the period is open to "members of the public." (D.E. 25-7, p. 1).

or engage in "[d]efamation, intimidation, personal affronts, profanity, or threats of violence" during meetings. *Id.* at 2.

Defendants have moved for summary judgment on Plaintiff's claim. They raise two arguments: (1) the Rules of Decorum are constitutional in the context of a limited public forum like the City Council Meetings; and (2) Plaintiff's speech amounts to unprotected fighting words. (D.E. 27, p. 19–21). As the movant, Defendants bear the initial burden of identifying the portions of the record they believe show the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.

Defendants have not met their burden and accordingly are not entitled to summary judgment on Plaintiff's First Amendment claim regarding the Rules of Decorum.

As an initial matter, Defendants have not pointed to competent summary judgment evidence to establish why Plaintiff was removed from the meetings. In their motion, Defendants state that "Plaintiff's behavior in both meetings constituted fighting words and violated [the rules prohibiting swearing, disruptive behavior, fighting words, and purely personal attacks]." (D.E. 27, p. 4). However, Defendants do not cite to any record evidence to support this factual assertion regarding the reason(s) for Plaintiff's removal, and fail to specify which Rule of Decorum (or provision thereof) he violated.[7] And, the precise Rule or provision which Plaintiff was found to have violated (and the attending reason for removal) is material to the resolution of his as-applied First Amendment challenge. If, for example, Plaintiff was removed for disruptive behavior, that would implicate the First Amendment in a different way than if he were removed for using profanity. That is because the former likely constitutes a content-neutral restriction on either the manner of speech (shouting) or non-speech conduct (banging fists on table or other "disruptive

---

[7] Although Defendants cite to videos of the incidents, the videos only show the sequence of events. They do not explain why Plaintiff was removed or which specific Rule he violated.

behavior"), while the latter constitutes a content-based restriction on Plaintiff's speech. *See, e.g., Wenthold v. City of Farmers Branch, Tex.*, No. 3:11-CV-0748-B, 2012 WL 467325, at \*6 (N.D. Tex. Feb. 14, 2012) (Boyle, J.), *aff'd sub nom. Wenthold v. City of Farmers Branch, Tex.*, 532 Fed. Appx. 474 (5th Cir. 2013) (noting doctrinal implications of whether restriction is content-based or content-neutral). Defendants have not pointed the Court to competent summary judgment evidence that resolves this material, factual question. Accordingly, Defendants are not entitled to summary judgment.

Defendants' argument regarding Plaintiff's use of fighting words suffers from similar defects. Putting aside the question regarding the reason for Plaintiff's removal, and assuming he was removed on the basis of his speech, Defendants have failed to direct the Court to competent summary judgment evidence specifying which words constituted fighting words. To be sure, Defendants note that Plaintiff called City Officials and audience members "pieces of shit" and referred to an audience member as "a fucking moron." (D.E. 27, p. 4, 18). But, in their substantive argument regarding the use of fighting words, Defendants broadly assert that "[t]he speech that Plaintiff exhibited here went far beyond that of a middle finger[.]" *Id.* at 20. And, within the specified portion of the video of the incident—spanning about six minutes—they do not specify which speech in particular purportedly constitutes fighting words. *Id.* at 20. The Court will not dig through the record to identify all of Plaintiff's potentially quarrelsome language and then construct a legal argument on Defendants' behalf as to why that language might constitute fighting words. *See Stults v. Conoco, Inc.*, 76 F.3d 651, 657 (5th Cir. 1996) (finding no duty to sift through record); *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 469 n.1 (5th Cir. 2003) (Jones, J., dissenting) ("A court need not make the lawyer's case.").[8] And, given that not all profanity

---

[8] Defendants' reference to a singular case does not alter this analysis, either. As the *Estes* court's analysis demonstrates, determining whether a specific gesture or utterance constitutes fighting words is an intensely

constitutes fighting words, *see, e.g., Cohen v. California*, 403 U.S. 15, 19–20 (1971), even if Defendants had pointed the Court to evidence that established Plaintiff's speech constituted unprotected fighting words, that would not necessarily resolve a facial challenge to the Rules of Decorum. *See Hinckley*, 526 F. Supp. 3d at 227 (explaining the breathing room between an as-applied and First Amendment overbreadth challenge to a statute).

Finally, assuming that Plaintiff was removed from the meetings due to his protected speech, Defendants have not met their burden of establishing that their restriction of his speech passes constitutional muster. While the parties agree in their briefing that the City Council Meetings constitute a limited public forum, Defendants have pointed to no competent summary judgment evidence to support that conclusion.

"Limited public forums are created by governmental entities when they open property 'limited to use by certain groups or dedicated solely to the discussion of certain subjects.'" *Wenthold*, 2012 WL 467325, at *6 (quoting *Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 678 (2010)). "In limited public forums, 'a government may impose restrictions on speech that are reasonable and viewpoint-neutral.'" *Id.* (first quoting *Christian Legal Soc'y*, 561 U.S. at 679 n.11, and then citing *Chiu v. Plano Indep. Sch. D.*, 260 F.3d 330, 346 (5th Cir. 2001)). In contrast, "designated public forums are created by government entities when 'government property that has not traditionally been regarded as a public forum is intentionally opened up for that purpose." *Id.* at *7 (citing *Christian Legal Soc'y*, 561

---

fact-bound and context-specific endeavor. *See Estes v. State*, 660 S.W.2d 873, 875 (Tex. App.—Fort Worth 1983, pet. ref'd). Defendants' argument amounts to the assertion that Plaintiff's speech "went far beyond that of a middle finger" (the speech at issue in *Estes*) and therefore must constitute fighting words. (D.E. 27, p. 20). Again, Defendants have not pointed the Court to the specific language they allege constitutes fighting words. What's more, Defendants do not include any discussion of the attendant circumstances and do not argue how a graduation ceremony (*Estes*) should be treated as relevantly similar to a public comment period during a City Council meeting. Accordingly, their cursory reference to *Estes* does not entitle them to summary judgment.

U.S. at 679 n.11). In designated public forums, content-based restrictions on speech are subject to strict scrutiny—they must be narrowly tailored to serve a compelling government interest. *Id.*

The forum determination bears on the outcome of Plaintiff's constitutional challenge due (at least) to the Rules of Decorum's prohibition on the use of profanity. A limitation on speech is content-based if it "target[s] speech based on its communicative content[.]" *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). To qualify as content-neutral, a restriction on speech must be "justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (alterations in original) (citations omitted). "A restriction on . . . profanity . . . is naturally content-based." *Iancu v. Brunetti,* 588 U.S. 388, 419 (2019) (Sotomayor, J. concurring) (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383 (1992)). In a designated public forum, profanity may not be constitutionally prohibited unless it also falls into a category of unprotected speech, such as fighting words. *See Beckerman v. City of Tupelo, Miss.*, 664 F.2d 502, 513–14 (5th Cir. 1981); *cf. Cohen*, 403 U.S. at 19–20 (overturning conviction for wearing "Fuck the Draft" jacket in municipal courthouse because no evidence that speech fell within unprotected category).

Defendants have not met their initial burden to identify the portions of the record that show the absence of any genuine issue of material fact regarding the forum question. *Celotex*, 477 U.S. at 323. Specifically, they have presented no competent summary judgment evidence to demonstrate that the public comments periods during City Council meetings are in fact a limited public forum. The only evidence they point to are the Rules of Decorum themselves. (D.E. 25-7). But, the Rules alone are indeterminate on this question. Although the category of "public hearing on an agenda item" might suggest a limitation of the topics up for discussion, the accompanying "citizens comment period," when read in context, suggests no limits whatsoever. *Id.* at 1. And,

even assuming a "public hearing on an agenda item" contains some limitation rendering it a limited public forum, Defendants have presented no evidence that Plaintiff was in fact speaking during such a period. In fact, at the March 13, 2025 hearing, Counsel for Defendants informed the Court that there are presently no restrictions either on who can speak, or what they can speak about, during either of the comments periods. *See* March 13, 2025 Minute Entry. This suggests that rather than a limited public forum, the existing public comments periods are properly classified as a designated public forum. *See Wenthold*, 2012 WL 467325, at *7. And, in a designated public forum, content-based restrictions on speech are subject to strict scrutiny. *Id.* Under that rubric, Defendants have not provided any argument explaining how their content-based restriction (no profanity) is narrowly tailored to serve a compelling government interest.

Because Defendants have not met their initial burden to show the absence of a genuine issue of material fact, the Court **DENIES** Defendant's motion for summary judgment on Plaintiff's First Amendment challenge to the Rules of Decorum.

### III. Conclusion

To sum things up: Plaintiff has abandoned or withdrawn all but four of his claims. The Court now **DISMISSES** the abandoned Equal Protection, retaliation, and malicious prosecution claims and the withdrawn defamation claim. For his unabandoned claims involving the administrative search, the cease-and-desist letters, and the criminal trespass warnings, Plaintiff names only Defendants in their official capacities and fails to allege that they acted pursuant to any official policy or custom. Accordingly, the Court **DISMISSES** those claims for failure to state a claim. Finally, with respect to Plaintiff's First Amendment challenge to the Rules of Decorum, Defendants have not met their initial burden of showing no genuine dispute of material fact regarding either the constitutionality of the Rules facially or as-applied to Plaintiff, or that Plaintiff

was removed on the basis of unprotected speech. As such, the Court **DENIES** Defendants' motion for summary judgment on that claim.

The sole claim to survive this Order is Plaintiff's First Amendment claim directed at the Rules of Decorum. The only remaining defendant is the City of Aransas Pass. The Court will enter a separate housekeeping order detailing next steps in this matter.

SO ORDERED.

DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Signed: Corpus Christi, Texas
July 7, 2025